**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**DARRYL BROOKS,**

        **Plaintiff,**

-vs-                                                              Case No.  3-:03-CV-441

**MONTGOMERY COUNTY, OHIO, et al.,**

                                                                  Judge Thomas M. Rose

        **Defendants.**

---

**ENTRY AND ORDER GRANTING DEFENDANTS MONTGOMERY COUNTY, OHIO AND SHERIFF DAVID VORE'S MOTION FOR SUMMARY JUDGMENT (Doc. #30) AND OVERRULING DEFENDANT JOHN J. SPIRK'S MOTION FOR SUMMARY JUDGMENT (Doc. #31)**

---

       This matter arises from an altercation that took place in the jail of Defendant Montgomery County, Ohio ("Montgomery County"). Plaintiff Darryl Brooks ("Brooks") was an inmate at the time and was involved in the altercation. At the time of the altercation, Defendant John J. Spirk ("Spirk") was a Corrections Officer stationed at the jail. Defendant David Vore ("Sheriff Vore") was the Sheriff of Montgomery County and operated the jail for Montgomery County.

       As a result of the altercation, Brooks brings a four-count Complaint. Count 1 is a constitutional claim against Spirk for the use of excessive force in violation of the Fourth and Eighth Amendments to the U.S. Constitution. Count 2 consists of state-law claims against Spirk for assault and battery, intentional infliction of emotional distress and use of excessive force. Count 3 is a supervisory liability claim against Vore for failure to properly train his Deputies and

Count 4 is a municipal liability claim against Montgomery County for allowing systemic deficiencies in the training and discipline of the Corrections Officers who staffed the jail

Now before the Court is a Motion for Summary Judgment by Montgomery County and Sheriff Vore (hereinafter the "Montgomery County Defendants") (doc. #30) and a Motion for Summary Judgment by Spirk (doc. #31). These motions are now fully briefed and ripe for decision. An evidentiary issue raised by Spirk will first be addressed followed by the standard of review for motions for summary judgment and an analysis of each of the motions.

## RULE 56 EVIDENCE

Spirk argues in his Reply Memorandum that unsworn witness statements do not satisfy the requirements of Fed.R.Civ.P. 56(e) and are not to be considered for purposes of motions for summary judgment. This is correct with an exception being declarations made in accordance with 28 U.S.C. §1746.

Rule 56(c) authorizes the consideration of pleadings, depositions, answers to interrogatories, admissions and affidavits when deciding motions for summary judgment. Further, affidavits which may be considered must be made on personal knowledge and must set forth facts as would be admissible in evidence. *State Mutual Life Assurance Company of America v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979). Hearsay and opinion evidence are not to be considered for Rule 56 purposes. *Id.*

Also, pursuant to 28 U.S.C. §1746, an unsworn declaration has the same force and effect as an affidavit if it recites that it was executed "under penalty of perjury." *Sterling China Co. V. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24*, 357 F.3d 546, 557 n.1 (6th Cir. 2004). Specifically, unsworn declarations executed within the United States are valid Rule 56

evidence if the declaration is subscribed as true under penalty of perjury and dated in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." 28 U.S.C. §1746.

In this case, Spirk argues that witness statements that were part of the Montgomery County Sheriff's internal investigation related to Brooks' claims that Spirk used excessive force are not admissible as Rule 56 evidence. Spirk specifically identifies the statements of Detective Shawn Lamb and Corrections Officers Rod Brown ("Brown"), Ranse Creech ("Creech"), Timothy Adams ("Adams"), Noel Meyer and Ryan Nill.

Attached to the Montgomery County Defendants' Motion for Summary Judgment is the Affidavit of Kurt Althouse ("Althouse"). Attached to Althouse's Affidavit is a Montgomery County Sheriff's Office Internal Investigation Report (the "Internal Investigation Report") that Althouse testifies he prepared as a result of his investigation of an "employee complaint" filed by Brooks. (Althouse Aff. ¶2, 3.) Therefore, since Althouse has adopted the Internal Investigation Report as his, any conclusions by Althouse's that are included in the Internal Investigation Report and are based upon his personal knowledge of the incident being investigated are admissible as Rule 56 evidence. Conclusions by Althouse or others in the Internal Investigation Report that are not based upon Althouse's personal knowledge of the incident are not admissible as Rule 56 evidence.

There is no evidence in Althouse's Affidavit or elsewhere that Althouse had personal knowledge of the incident. Therefore, the Internal Investigation Report is not admissible as Rule 56 evidence.

Attached to Brooks' Responses to Spirk and the Montgomery County Defendants' Motions for Summary Judgment are Statements by Corrections Officers Brown, Creech and Adams. Each Statement is dated at the top and is preceded by the following statement:

> IT IS UNDERSTOOD THAT THIS STATEMENT IS MADE OF MY OWN FREE WILL AND THAT I HAVE NOT BEEN PLACED UNDER DURESS OR MADE ANY PROMISES IN EXCHANGE FOR IT. I FURTHER ACKNOWLEDGE THAT ALL STATEMENTS CONTAINED HEREIN ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND THAT I AM AWARE THAT TO KNOWINGLY MAKE A FALSE STATEMENT TO A LAW ENFORCEMENT OFFICER IN THE PERFORMANCE OF HIS DUTIES MAY BE PUNISHABLE BY LAW. (OHIO REVISED CODE 2921.)

While these statements are not sworn affidavits, they substantially follow the requirements for admissible declarations as set forth in 28 U.S.C. §1746. Those making the Statements indicate that, under penalty of perjury, the Statements are true and correct.

Therefore, the Statements by Corrections Officers Brown, Creech and Adams are admissible as Rule 56 evidence to the extent that the Statements are based upon the personal knowledge of the individual making the statement. The analysis next turns to a summary of the relevant facts, viewed as they must be, in a light most favorable to Brooks', the nonmoving party.

**FACTUAL BACKGROUND**

Brooks was originally booked into jail on November 7, 2000, following his arrest on federal drug conspiracy charges. (Brooks Dep. 31.) He pled guilty to Conspiracy To Possess With Intent To Distribute Cocaine and Heroin and received a sentence of 192 months that was reduced to 78 months as credit for cooperation. (Id. 22.) In early December of 2002, Brooks was transferred from the Ashland Kentucky Federal Penitentiary back to Montgomery County to provide federal grand jury testimony. (Id. 23, 54.)

On December 7, 2002, while an inmate in POD C of the Montgomery County jail, Brooks was involved in a fight with another inmate. (Montgomery County Sheriff's Office Employee Complaint Form (hereinafter "Complaint Form")). Brooks testifies that he started a fight with the other inmate because the other inmate disrespected Brooks by making noises while Brooks was talking on the telephone. (Brooks Dep. 62, 65-68.) Multiple fights then broke out in the POD. (Spirk Aff. ¶6, Brooks Dep. 79, 179.)

An older Corrections Officer entered the POD and grabbed Brooks by the shirt. (Brooks Dep. 95.) Brooks broke the Correction's Officer's hold. (Id.) Brooks then saw other Corrections Officers entering the POD and, after hesitating, laid down on the floor. (Id. 179.) Brooks indicates that he hesitated because he was not sure where the Corrections Officers wanted him to lay down. (Id.) Corrections Officer Adams and other Corrections Officers had told Brooks to get down on the floor. (Complaint Form.)

While Brooks was on the floor, Brown put Brooks' right arm behind his back. (Brooks Dep. 112.) Brooks testifies that, while he was on the floor with his right arm behind his back, Spirk kicked him four to six times. (Brooks Dep. 114; Complaint Form.) Spirk kicked Brooks in the lower back, upper back and the back of the head. (Brooks Dep. 114.)

Brooks was then handcuffed by Brown. (Brooks Dep. 128-29.) After Brown handcuffed Brooks, Spirk stopped kicking him. (Brooks Dep. 120.) After being handcuffed, Brooks was escorted out of the POD and taken to a holding cell. (Brooks Dep. 128-29.)

Shortly thereafter, while in the holding cell, Brooks noticed blood in his urine and his underwear and was taken by Sheriff's Office personnel to Grandview Hospital for treatment. (Brooks Dep. 143-43.) The medical personnel at Grandview told Brooks that the blood in his

urine could have come from kicks that he received but that it was not very serious. (Brooks Dep. 142.) Brooks was given Motrin to take three times daily for five days. (Id. 155.) He took the Motrin and did not seek further medical assistance. (Id.)

On December 12, 2002, Brooks complained to the Sheriff's Office about being kicked by Spirk. (Complaint Form.) As a result of Brooks' complaint, Sergeant Althouse conducted an internal investigation of the incident. (Althouse Aff. ¶2.) A criminal investigation of the incident was also conducted. (Id. ¶4.) As a result of the two investigations, Spirk was charged with Assault in violation of O.R.C. §2903.13. (Id. ¶6.) The Assault charge was later dismissed pursuant to an agreement between Spirk and Brooks that required Spirk to resign from his employment with the Sheriff's Office (Id.)

Spirk does not admit to kicking Brooks. (Spirk Aff.) However, he testifies that he placed Brooks' legs in a control hold so that Brown could handcuff him and that he only used that amount of force that was necessary to subdue Brooks. (Id. ¶¶11, 12.)

Several witnesses observed Spirk kick Brooks in the upper torso area when Brooks was laying face down on the floor and was compliant. Brown testifies that he observed Spirk kick Brooks four to six times as he lay prone and under control. (Rod Brown Statement 1-2.) Brown grabbed Spirk by the shirt and pulled him off of Brooks. (Id. 2-3.)

Creech testifies that, while he was sitting on Brooks before Brooks was cuffed, Spirk came up and kicked "toward" Brooks. (Ranse Creech Statement at 1.) Creech also saw Spirk dropping his weight on Brooks' crossed legs while Brooks was on the floor and the Corrections Officers were waiting for handcuffs to arrive. (Id. 2.)

Finally, Adams testifies that he asked Spirk to help him with Brooks. (Timothy Adams Statement at 2.) When Adams turned away, he saw Spirk begin to kick Brooks. (Id.)

Spirk had begun his employment with the Montgomery County Sheriff's Office on November 26, 2001, as a corrections officer. (Pl.'s Mem. In Opp'n, Doc. 34, Ex. 8.) On March 23, 2002, he was involved in an incident outside his work setting where he was discourteous to a citizen and, therefore, committed a violation of a Sheriff's Office rule of professional conduct. (Id., Ex. 9.) As a result of the incident, Spirk received two unsatisfactory ratings on his performance evaluation report for the first eight (8) months of his employment. (Id. Ex. 13.) Having set forth the relevant facts, the analysis turns to the standard of review for motions for summary judgment.

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might

support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. As set forth above, the Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

Brooks' Complaint also includes a state law claim. In addition to applying the federal procedural standard for motions for summary judgment, this Court must apply Ohio substantive law. *Hisrich v. Volvo Cars of N. America, Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms. Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)). The analysis next turns to Spirk's Motion for Summary Judgment.

## SPIRK'S MOTION FOR SUMMARY JUDGMENT

Spirk argues that he is entitled to summary judgment on the first two Counts of Brooks' Complaint, the only Counts against him. Count 1 is a constitutional claim for the use of excessive force in violation of the Fourth and Eighth Amendments to the U.S. Constitution. Count 2 consists of state-law claims against Spirk for assault and battery, intentional infliction of emotional distress and use of excessive force.

Specifically, Spirk asserts that Brooks has no standing to assert a Fourth Amendment claim, that he did not violate Brooks' Eighth Amendment rights and that he is entitled to qualified immunity from Brooks' state law claims. Brooks responds that Spirk violated his Eighth Amendment right to be free from cruel and unusual punishment and that Spirk is not entitled to qualified immunity.

First, the constitutional claims. A civil cause of action against any person who, under color of state law, deprives a citizen of constitutional rights is provided by 42 U.S.C. §1983. *See, Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991). To succeed on a Section 1983 claim, a plaintiff must prove two elements: (1) that the plaintiff was deprived of a "right secured by the federal Constitution or laws of the United States, and (2) that the deprivation was caused by a person while acting under color of state law." *Id.* Therefore, to sustain Count 1 of his Complaint, Brooks must show that Spirk deprived him of a right secured by the federal Constitution or laws of the United States and that Spirk did so while acting under color of state law.

At the time of the incident, Spirk was acting as a corrections officer in a prison operated by Montgomery County which is an arm of the State of Ohio. Spirk was, therefore, acting under color of state law and the Parties do not argue otherwise. As a result, to sustain Count 1 of his Complaint, Brooks must show that Spirk deprived him of a right secured by the federal Constitution or laws of the United States.

In this case, Brooks alleges that Spirk deprived him of his right to be free from the use excessive force as provided by the Fourth Amendment to the U.S. Constitution and his right to be free from cruel and unusual punishment as provided by the Eighth Amendment to the U.S.

Constitution. Brooks also alleges that these violations took place while he was convicted of a crime and was a prisoner therefore.

The Eighth Amendment's Cruel and Unusual Punishment Clause, rather than the Fourth Amendment or the Due Process Clause of the Fourteenth Amendment is used to decide excessive force claims by those convicted of crimes. *Gravely v. Madden*, 142 F.3d 345, 348 (6th Cir. 1998) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). Therefore, Count 1 of Brooks' Complaint for Constitutional violations is evaluated using Eighth Amendment standards.

The Eighth Amendment provides that: "Excessive Bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995), *cert. denied*, 515 U.S. 1116 (1995). However, in a prison setting as is the case here, " the maintenance of prison security and discipline may often require that prisoners be subjected to physical contact which at common law would be actionable as an assault." *Id.* Yet, the Eighth Amendment prohibition of cruel and unusual punishment is violated if the offending conduct "reflect[s] an **unnecessary and wanton infliction of pain**." *Id.* (citing *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993)).

An Eighth Amendment claim has both an objective and subjective component. *Moore*, 2 F.3d at 700. The objective component requires that the pain be serious.

Although Brooks has testified that he was told that his injuries were not serious, Spirk does not, for purposes of his Motion for Summary Judgment, argue that Brooks' pain was not serious. Therefore, the objective component of Brooks' Eighth Amendment claim is satisfied for summary judgment purposes.

The subjective component of an Eighth Amendment claim is measured by the deliberate indifference standard set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976). *Id.* The deliberate indifference standard requires that the "offending, non-penal conduct be wanton. *Id.* Under the circumstances of a prison disturbance, wantonness is "malicious and sadistic acts whose very purpose is to inflict harm." *Id.*

Not every "malevolent touch" by a prison guard violated the Eighth Amendment provided the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)(citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). For example, a good faith effort to maintain or restore discipline may not be violative of the Eighth Amendments Cruel and Unusual Punishment Clause in a prison setting. *Pelfrey*, 43 F.3d at 1037. The shooting of a prisoner during the quelling of a riot did not violate the prisoner's Eighth Amendment rights where the riot posed significant risks to the safety of inmates and prison staff. *Whitley*, 475 U.S. at 326. Also, conduct that furthers other legitimate penological or institutional objectives may not be violative of the Eighth Amendments Cruel and Unusual Punishment Clause in a prison setting. *Pelfrey*, 43 F.3d at 1037. However, supplementing a prisoner's official punishment by beating him violates the prisoner's Eighth Amendment rights. *Id.* Also, conduct designed to frighten and degrade a prisoner by reinforcing the fact that his continued well-being was entirely dependent upon the good humor of a guard violates a prisoner's Eighth Amendment rights. *Id.*

When prison officials, such as Spirk, are accused of using excessive force in violation of the Eighth Amendment, the core inquiry is that set out in *Whitley*: "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm." *Hudson,* 503 U.S. at 6. The *Whitley* factors to be considered in determining whether the use of force was wanton and unnecessary are: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 7. Further, the degree of intent to inflict the punishment is not an element to be considered. *Parrish v. Johnson*, 800 F.2d 600, 605 (6th Cir. 1986). In this case, each of the Whitley factors must be considered with regard to the kicking of Brooks by Spirk to determine if Spirk's actions constituted an unnecessary and wanton infliction of pain.

First, there is evidence that Brooks was injured. Brooks complained of back pain and had blood in his urine. Brooks took Motrin as prescribed for five days and sought no further medical assistance for his injuries.

Second, there is evidence of a need for application of force. Several fights had broken out in POD C and the inmates, including Brooks, were not readily responding to verbal orders.

Third, there is evidence that Spirk used more force than was needed. Brooks was lying on the floor, subdued, with his right arm behind his back when he was kicked by Spirk. Spirk kicked Brooks in the lower back, upper back and the back of the head. As a result, there is evidence that the kicks administered by Spirk were not necessary to subdue Brooks. There is also evidence that the injuries to Brooks may have been caused by Spirk's kicking.

Fourth, there is evidence that Spirk and the other Corrections Officers reasonably perceived a threat. Several inmates in POD C were fighting and the safety of other inmates and of the Corrections Officer present was at risk.

Finally, there is no evidence that Spirk attempted to temper the severity of his kicking. There is evidence, however, that another Corrections Officer had to temper the severity of Spirk's kicking by pulling him away from Brooks.

An analysis of the *Whitley* factors reveals evidence that a threat was perceived that necessitated the use of force but that Spirk used more force than necessary. Further, Spirk did not temper his use of force and Brooks was injured to the extent that Brooks required medical attention.

Spirk identifies the Fifth Circuit case of *George v. Evans*, 633 F.2d 413, 415 (5th Cir. 1980), for the proposition that there is no Eighth Amendment violation when a prisoner is struck with a nightstick several times. However, this argument is not well founded. In *Pelfrey*, the Sixth Circuit specifically disagreed with the Fifth Circuit's conclusion and found that a single, unprovoked attack by prison security guards may state a cognizable Eighth Amendment claim. 43 F.3d at 1037.

In conclusion, based upon an analysis of the *Whitley* factors, there is evidence from which a reasonable juror could conclude that Spirk's kicking of Brooks while Brooks was lying on the floor of POD C was an unnecessary and wanton infliction of pain. Therefore, there are genuine issues of material fact and Spirk is not entitled to summary judgment on Count 1 of Brooks' Complaint for violation of his Eighth Amendment rights.

Spirk also argues that he is entitled to qualified immunity on Brooks' state law claims pursuant to Ohio Rev. Code §2744.03(A)(6). Section 2744.03 provides limited immunity to employees of political subdivisions "as long as the employees did not act with malicious

purpose, in bad faith, or in a wanton or reckless manner. *Otero v. Wood*, 316 F.Supp.2d 612, 629 (S.D.Ohio 2004).

In this case, as determined above, there is evidence from which a reasonable juror could conclude that Spirk's kicking of Brooks while Brooks was lying on the floor of POD C was a wanton action. Therefore, there are genuine issues of material fact and Spirk is not entitled to the limited immunity provided by Section 2744.03. As a result, Spirk is not entitled to summary judgment on Count 2 of Brooks' complaint which alleges various state law claims.

In sum, there are genuine issues of material fact and Spirk is not entitled to summary judgment on either Count 1 or Count 2 of Brooks' Complaint. Spirk's Motion for Summary Judgment is, therefore, OVERRULED. The analysis turns to the Montgomery County Defendants' Motion for Summary Judgment.

## THE MONTGOMERY COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Montgomery County Defendants argue that they are entitled to summary judgment because they cannot be held liable in this case under the theory of respondeat superior. Sheriff Vore also argues that he is entitled to qualified immunity. Brooks responds that the Montgomery County Defendants are not entitled to summary judgment because Spirk's behavior prior to the incident on December 7, 2002, was such that he should have been removed from the jail setting and given training prior to being allowed to interact with inmates.

As indicated above, 42 U.S.C. §1983 provides a cause of action against any person who, under color of state law, deprives a citizen of Constitutional rights. To succeed on a Section 1983 claim, a plaintiff must prove two elements: (1) that the plaintiff was deprived of a "right secured

by the federal Constitution or laws of the United States, and (2) that the deprivation was caused by a person while acting under color of state law." *Id.*

In this case, Brooks claims that Montgomery County Defendants are liable to him, pursuant to Section 1983, under a municipal liability theory. To prevail in a Section 1983 claim under a municipal liability theory, a plaintiff must show that the alleged constitutional violation occurred because of a municipal policy or custom. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978)).

Said another way, a municipality may not be sued under Section 1983 based upon respondeat superior liability. *Id.* To establish municipal liability, the municipality's policy or custom must be the "moving force" of the Constitutional violation. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).

For example, a municipality may be sued for the existence of an illegal policy or custom such as a policy of inadequate training or supervision. *Thomas*, 398 F.3d at 429. Pursuant to the existence of an illegal policy or custom regarding police training, a municipality may be sued where a "failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989).

However, for the municipality to have liability for failure to train, an identified deficiency in a city's training program must be closely related to the constitutional injury. *Id.* at 391. The focus "must be" on the adequacy of the training program in relation to the tasks that the

particular officer must perform. *Id.* at 390. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city…" *Id.*

In this case, Brooks alleges that the case against the Montgomery County Defendants is that Spirk's behavior prior to December 7, 2002, was such that he should have been removed from the Jail setting and given training prior to being allowed to interact with inmates. In making this allegation, Brooks points to a single incident and concludes that Spirk had an "emotional blowup" and had problems in handling his temper when in a stressful situation. However, Brooks does not provide an evidentiary basis for either of these conclusions.

The Rule 56 evidence before the Court consists of one incident which occurred on March 23, 2002, wherein Spirk, in uniform but off the clock, used profanities towards a citizen. This incident was investigated by the Sheriff's Office which resulted in a conclusion that Spirk engaged in improper conduct. There is no evidence that Spirk had an "emotional blowup" or that Spirk had problems in handling his temper in a stressful situation.

In addition to failing to provide evidence that Spirk was not properly trained for the situation that occurred in POD C on December 7, 2002, Brooks has not presented any evidence regarding the inadequacy of the training program for corrections officers as he must do to satisfy a claim against the Montgomery County Defendants. Said another way, Brooks has not shown that either Sheriff Vore or Montgomery County was deliberately indifferent to Brooks' Constitutional rights.

Therefore, there are no genuine issues of material fact and Sheriff Vore is entitled to judgment as a matter of law on Count 3 of Brooks' Complaint regarding supervisory liability. Likewise, there are no genuine issues of material fact and Montgomery County is entitled to

judgment as a matter of law on Count 4 of Brooks' Complaint for municipal liability. The Montgomery County Defendants' Motion for Summary Judgment is GRANTED.

## SUMMARY

There are genuine issues of material fact regarding whether Spirk's kicking of Brooks while he was lying on the floor of POD C was an unnecessary and wanton infliction of pain and, therefore, violative of Brooks' Eighth Amendment rights. Therefore, Spirk's Motion for Summary Judgment is OVERRULED.

Brooks has not presented evidence that the supervision and training of Spirk was inadequate or evidence of an illegal policy or custom regarding the training of Montgomery County corrections officers. Therefore, there are no genuine issues of material fact and the Montgomery County Defendants are entitled to judgment as a matter of law. Defendants Montgomery County and Sheriff Vore's Motion for Summary Judgment is GRANTED. In addition, since Sheriff Vore is entitled to summary judgment for other reasons, his claim of qualified immunity need not be addressed.

Brooks' claims against Sheriff Vore and Montgomery County are DISMISSED. Brooks' claims against Spirk remain to be adjudicated.

**DONE** and **ORDERED** in Dayton, Ohio, this Tenth day of January, 2006.

                                          s/Thomas M. Rose

                                          THOMAS M. ROSE
                                      UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record